08 CIV 8225

JUDGE STEIN

# THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FOGEL CAPITAL MANAGEMENT, INC., And On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>RICHARD S. FULD, JR., MICHAEL L. AINSLIE, JOHN F. AKERS, ROGER S. BERLIND, THOMAS H. CRUIKSHANK, MARSHA JOHNSON EVANS, SIR CHRISTOPHER GENT, ROLAND A. HERNANDEZ, HENRY KAUFMAN, JOHN D. MACOMBER, BANC OF AMERICA SECURITIES LLC, CITIGROUP GLOBAL MARKETS INC., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, MORGAN STANLEY & CO. INCORPORATED, UBS SECURITIES LLC., and WACHOVIA CAPITAL MARKETS, LLC.,<br><br>Defendants. | **Civil Action:**<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED**<br><br> |

Plaintiff, individually and on behalf of all other persons similarly situated (the "Class"), by Plaintiff's undersigned attorneys, makes the following allegations on information and belief based upon the investigation of counsel, except as to the allegations pertaining specifically to Plaintiff and Plaintiff's counsel which are based on personal knowledge. The investigation conducted by Plaintiff's counsel included, *inter alia*, a review and analysis of: (i) publicly-available news articles and reports; (ii) public filings including, but not limited to, Lehman Brothers Holdings Inc.'s ("Lehman" or the "Company") Securities and Exchange Commission ("SEC") filings and prospectuses; (iii) securities analysts' reports and advisories about the Company; and (iv) press releases issued by defendants. Plaintiff believes that substantial

evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF ACTION

1.      This is a securities class action filed on behalf of purchasers of Lehman Preferred Series "J" stock ("Preferred J") from the date of the Company's public offering on February 5, 2008 (the "Offering"), and all purchasers traceable thereto (the "Class Period"). These claims are brought against certain officers and directors of Lehman and the lead underwriters of the Offering, (collectively, "Defendants") for violations of the federal securities laws in connection with the Offering.

2.      This action arises under Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77l and 77o which imposes liability on a company's directors and officers, among others, for failure to craft a registration statement and prospectus (the "Prospectus") that fully and accurately informs investors of all material facts and industry trends affecting the issuer company. The issuer itself is held strictly liable for any material misrepresentations or omissions found in its Prospectus. Additionally, every person in a position of control over the issuer is held liable.

3.      This Complaint asserts that Lehman's Prospectus contained both material misstatements and omissions, which Plaintiff and the Class relied upon to their detriment. The representations made in the Company's Prospectus were materially false and misleading because at the time of the Offering, Lehman was already suffering from several adverse factors that were not revealed and/or adequately addressed in the document. These factors include, but are not limited to, (i) the failure to disclose Lehman's continued and aggressive marketing of risky products linked to sub-prime mortgages in the face of the housing bubble collapse; (ii) the failure to set aside adequate allowances to cover the Company's ever increasing portfolio of

2

underperforming sup-prime related products; (iii) the continued marketing of highly risky mortgage bonds and CDO's backed by deteriorating assets even as the market for such investment vehicles dried up; (iv) the promotion of unsustainable business practices designed to exploit the mortgage lending business despite the inherent and actual risks involved; (v) the insufficient capital levels; (vi) the failure to adequately write-down commercial and residential mortgage and real estate assets; and, (vii) the failure to prevent and remedy such improper and harmful actions that resulted in the Company being forced into bankruptcy. These factors were already causing a material adverse affect on Lehman's business and directly led to Lehman's September 15, 2008 announcement that it was seeking protection under the Federal Bankruptcy Code in the largest bankruptcy filing in U.S. history.

4.     The Defendants could have – and should have – discovered the material misstatements and omissions in the Company's Prospectus prior to its filing with the SEC and distribution to the investing public. Instead, they failed to do so as a result of a negligent and grossly inadequate due diligence investigation.

5.     Certain of the adverse factors affecting Lehman's business were first revealed on March 18, 2008, in a Company issued press release announcing decreasing net revenues and declining asset values due to "continued deterioration in the broader credit markets, in particular residential mortgages, commercial mortgages and acquisition finance."

6.     Just a few weeks later the Company was forced to raise $4 billion via the issuance of stock to try to improve its liquidity and calm market speculators. These and similar efforts failed and on September 15, 2008, Lehman filed a voluntary petition to reorganize under Chapter 11 of the Federal Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of

New York in the largest bankruptcy filing in history and largely wiping out the investment interests of the Class.

7.      Plaintiff and the Class have suffered serious financial damage as a result of Defendants' material misstatements and omissions in the Company's Prospectus, and bring this action to recover damages incurred thereby as well as the costs and expenses of this litigation and any further relief as may be just and proper.

**JURISDICTION AND VENUE**

8.      The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act, 15 U.S.C. §§ 77k , 77l and 77o.

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a).

10.     Venue is proper in this Judicial District pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and 28 U.S.C. § 1391(b), because many of the alleged acts, transactions, and conduct constituting violations of law, including the issuance and dissemination of materially false and misleading information to the investing public, occurred, at least in part, in this District.   Additionally, Defendants reside, maintain their headquarters or conduct substantial business in this District.

11.     In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12.    Plaintiff Fogel Capital Management, Inc. purchased shares of Lehman Preferred J stock issued pursuant to the Offering, as shown on the attached Certification, and was damaged thereby.

13.    Non-party Lehman is a Delaware corporation with its principal executive offices located in New York, New York.  Lehman is an investment banking firm which, through its subsidiaries, provides various financial services to corporations, governments and municipalities, institutions, and high-net-worth individuals worldwide.  The Company's activities include raising capital for clients through securities underwriting and direct placements, corporate finance, merchant banking, securities sales and trading, research services and private client services.  On September 15, 2008, Lehman filed a voluntary petition to reorganize under Chapter 11 of the Federal Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of New York in what was the largest bankruptcy filing in history.  For this reason, and this reason alone, Lehman has not been named as a defendant in this Complaint.

14.    Defendant Banc of America Securities LLC ("BofA") is a subsidiary of Bank of America Corporation, a Delaware corporation that is headquartered at 100 North Tryon Street, Charlotte, North Carolina 28255.  BofA was an underwriter of the Lehman Offering.

15.    Defendant Citigroup Global Markets Inc. ("CITI") is a subsidiary of Citigroup Inc., a Delaware corporation that is headquartered at 399 Park Avenue, New York, New York 10043.  CITI was an underwriter of the Lehman Offering.

16.    Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") is a subsidiary of Merrill Lynch & Co., a Delaware corporation that is headquartered at 4 World Financial Center, New York, New York 10080.  Merrill Lynch was an underwriter of the Lehman Offering.

17.     Defendant Morgan Stanley & Co. Incorporated ("Morgan Stanley") is a subsidiary of Morgan Stanley, a Delaware corporation that is headquartered at 1585 Broadway, New York, New York 10036.  Morgan Stanley was an underwriter of the Lehman Offering.

18.     Defendant UBS Securities LLC. ("UBS") is a subsidiary of UBS AG, a Swiss corporation headquartered at Bahnhofstrasse 45, Zurich, Switzerland, and Aeschenvorstadt 1, Basel, Switzerland.  UBS was an underwriter of the Lehman Offering.

19.     Defendant Wachovia Capital Markets, LLC. ("Wachovia") is a subsidiary of Wachovia Corporation, a North Carolina corporation that is headquartered at One Wachovia Center, Charlotte, North Carolina 28288.  Wachovia was an underwriter of the Lehman Offering.

20.     Defendants BofA, CITI, Merrill Lynch, Morgan Stanley, UBS and Wachovia are collectively referred to hereinafter as the "Underwriter Defendants."

21.     Defendant Richard S. Fuld, Jr. ("Fuld") has been Chairman of the Board of Directors of Lehman Brothers Holdings Inc. and Lehman Brothers Inc. since 1994 and chief executive officer of the Company since 1993.  He is Chairman of Lehman Brothers' Executive Committee.  He was President and Chief operating Officer of Lehman Brothers Holdings Inc. and Lehman Brothers Inc. from 1993 to 1994, President and Co-Chief Executive officer of the Lehman Brothers Division of Shearson Lehman Brothers Inc. from 1990 to 1993, Vice Chairman of Shearson Lehman Brothers from 1984 until 1990, and has been a Director of Lehman Brothers Inc. since 1984.  He joined Lehman Brothers in 1969. From June 1, 2006, to the present Defendant Fuld has reaped over $125 million from trading in Lehman securities while in possession of material non-public information.  Defendant Fuld signed the June 5, 2006 Registration Statement for the Lehman Offering.

22.    Defendant Michael L. Ainslie ("Ainslie") has been a Director of Lehman Brothers Holdings Inc. since 1996, and serves as a member of the Audit Committee. He is a Director of Lehman Brothers Bank, FSB. Defendant Ainslie signed the June 5, 2006 Registration Statement for the Lehman Offering.

23.    Defendant John F. Akers ("Akers") has been a Director of Lehman Brothers Holdings Inc. since 1996. He serves as the Chairman of the Compensation and Benefits Committee and as a member of the Finance and Risk Committee. Defendant Akers signed the June 5, 2006 Registration Statement for the Lehman Offering.

24.    Defendant Roger S. Berlind ("Berlind") has been a Director of Lehman Brothers Holdings Inc. since 1985. He serves as a member of the Audit Committee and the Finance and Risk Committee. Defendant Berlind signed the June 5, 2006 Registration Statement for the Lehman Offering.

25.    Defendant Thomas H. Cruikshank ("Cruikshank") has been a Director of Lehman Brothers Holdings Inc. since 1996 and serves as the Chairman of the Audit Committee and as a member of the Nominating and Corporate Governance Committee. He is also a director of Lehman Brothers Inc. Defendant Cruikshank signed the June 5, 2006 Registration Statement for the Lehman Offering.

26.    Defendant Marsha Johnson Evans ("Evans") has been a Director of Lehman Brothers Holdings Inc. since 2004. She serves as the chair of the Nominating and Corporate Governance Committee and as a member of the Compensation and Benefits Committee and the Finance and Risk Committee. Defendant Evans signed the June 5, 2006 Registration Statement for the Lehman Offering.

7

27.    Defendant Sir Christopher Gent ("Gent") has been a Director of Lehman Brothers Holdings Inc. since 2003. He serves as a member of the Audit Committee and the Compensation and Benefits Committee. Defendant Gent signed the June 5, 2006 Registration Statement for the Lehman Offering.

28.    Defendant Roland A. Hernandez, ("Hernandez") has been a Director of Lehman Brothers Holdings Inc. since 2005. He serves as a member of the Finance and Risk Committee. Defendant Hernandez signed the June 5, 2006 Registration Statement for the Lehman Offering.

29.    Defendant Henry Kaufman ("Kaufman") has been a Director of Lehman Brothers Holdings Inc. since 1995. He serves as the Chairman of the Finance and Risk Committee. Defendant Kaufman is a resident of New York. From June 1, 2006 to the present, Defendant Kaufman has reaped over $3.5 million from trading in Lehman securities while in possession of material non-public information. Defendant Kaufman signed the June 5, 2006 Registration Statement for the Lehman Offering.

30.    Defendant John D. Macomber ("Macomber") has been a Director of Lehman Brothers Holdings Inc. since 1994. He serves as a member of the Compensation and Benefits Committee, the Executive Committee, and the Nominating and Corporate Governance Committee. Defendant Macomber signed the June 5, 2006 Registration Statement for the Lehman Offering.

31.    Defendants Fuld, Ainslie, Akers, Berlind, Cruikshank, Evans, Gent, Hernandez, Kaufman and Macomber are collectively referred to hereinafter as the "Director Defendants."

32.    Each of the individuals named in paragraphs 21-30 and each of the defendants named in paragraphs 14-19 (collectively, the "Underwriter Defendants") participated in the drafting, preparation, or approval of various false and misleading statements contained in the

8

Registration Statement/Prospectus in connection with the Offering, as complained of herein. Each of the defendants was responsible for ensuring the truth and accuracy of the statements contained in the Registration Statement/Prospectus in connection with the Offering.

33.    Each of the defendants, owed to the purchasers, including Plaintiff and the class (defined below), the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement/Prospectus at the time it became effective.  This duty included performing an appropriate investigation to ensure that the statements contained therein were true, and that there were no omissions of material fact required to be stated in order to make the statements contained in the Registration Statement/Prospectus not misleading.  As herein alleged, each of the defendants violated these specific duties and obligations.  As a result of these violations, the market price of Lehman Preferred Series "J" stock was artificially inflated, causing injury to Plaintiff and the class.

## FACTUAL ALLEGATIONS

34.    On June 5, 2006, Lehman – formerly the largest underwriter of mortgage bonds in the country – filed a registration statement with the SEC, indicating its intent to float a public offering for the Company's Preferred securities.

35.    On or about February 5, 2008, Lehman filed its prospectus supplement announcing the terms of the Preferred J stock to be issued pursuant to the previously filed registration statement.    The prospectus supplement stated Lehman intended to sell 66 million shares of Preferred J Securities at $25 per share, for a total value of $1.65 billion.  Due to over-allotment allowances granted to underwriters, 75,900,000 shares were issued for a total value of $1.8975 billion.  The underwriters of the Offering received approximately $59 million in fees. These securities trade on the New York Stock Exchange under the ticker symbol "LEH-J".

9

36.    The rewards that Defendants reaped in connection with the Lehman Offering were unlawfully obtained because Defendants violated Section 11 of the Securities Act. Under Section 11, directors and officers, among others, are liable in negligence for failure to craft a Prospectus which fully and accurately informs investors of all material facts and industry trends affecting the issuer company. The issuer itself is held strictly liable for any material misrepresentations or omissions from the Prospectus.

37.    A key policy underlying Section 11 liability is to enable prospective investors, like Plaintiff and the Class, to make informed investment decisions based on the disclosure of adequate and truthful information regarding the issuer, its associated persons, and the offering. This policy is frustrated when a prospectus contains materially false and misleading statements.

38.    Lehman's Prospectus was materially false and misleading because it failed to reveal the Company's significant exposure to the subprime market as the largest underwriter of U. S. mortgage bonds. The Prospectus also failed to disclose that as a result of the deteriorating market conditions and rapidly declining asset values, Lehman was in desperate need for capital and at substantial risk of failing as a going-concern.

39.    The Prospectus materially misrepresented the risks associated with investing in the Company. Markedly missing from the disclosures in the "Risk Factors" section of the Prospectus was any reference to the effect the down market could have on its financial position or the price of its securities based upon the Company's business operations. Nor did the Company disclose that its commercial and residential mortgage and real estate assets were overvalued by billions of dollars. Had Defendants conducted a proper and adequate due diligence investigation, however, they would have realized the effect caused by the softening mortgage market and weakening credit market.

10

40.    At the time of the Offering, Lehman was aware of these problems and was not taking proactive steps to lower its exposure or to disclose the risks to the public.  The market volatility was adversely and materially harming Lehman's business as a result of its aggressive pursuit of the mortgage backed underwriting business and would inevitably adversely affect the Company's business on a going-forward basis.

41.    Even though Lehman was aware of and experiencing these problems at the time of the Offering, Defendants did not begin to disclose them until March 18, 2008, when the Company released results for the quarter ended February 29, 2008.  The Company's press release stated that Lehman's Capital Markets division had "reported net revenues of $1.7 billion in the first quarter of fiscal 2008, a decrease of 52% from $3.5 billion in the first quarter of fiscal 2007.  Fixed Income Capital Markets reported net revenues of $262 million, a decrease of 88% from $2.2 billion in the first quarter of fiscal 2007, as strong performances in liquid products such as high grade corporate debt, foreign exchange and interest rate products were offset, in part, by continued deterioration in the broader credit markets, **in particular residential mortgages, commercial mortgages and acquisition finance.**"  (Emphasis added)

42.    In early April 2008, the Company was forced to raise $4 billion via the issuance of stock to improve its liquidity and calm market speculators.

43.    While the Company's prospects temporarily appeared to improve, its subprime exposure would lead to more problems.  On June 3, 2008, *Bloomberg News* published an article entitled "Lehman Loses up to $700 million on Hedging Positions, FT Says."  The article noted that the Company lost $500 million to $700 million in the second quarter which "may prompt the bank to seek more capital by selling a stake to an outside investor."

44.    On June 9, 2008, the Company issued a press release announcing that it had priced a $4 billion public offering of 143 million shares of common stock at $28 per share.

45.    The very same day — and a full week ahead of schedule — the Company issued a press release announcing its financial results for the second quarter ended May 31, 2008.  The Company reported a net loss of $2.8 billion.  The press release went on to state:

> **Capital Markets is expected to report net revenues of negative ($2.4) billion in the second quarter of fiscal 2008**, compared to $1.7 billion in the first quarter of fiscal 2008 and $3.6 billion in the second quarter of fiscal 2007.  **Fixed Income Capital Markets is expected to report net revenues of negative ($3.0) billion**, compared to $0.3 billion in the first quarter of 2008 and $1.9 billion in the second quarter of 2007.  [Emphasis added].

46.    Investors and Wall Street alike began to understand the depth of the problems at Lehman as more details about the $2.8 billion loss became available.  The almost $3 billion loss represented the firm's first-ever loss since becoming a public company in 1994.  Lehman also said that it would attempt to raise an additional $6 billion in fresh capital through the issuance of stock to try and stop the bleeding.

47.    On Monday, June 16, 2008, Lehman released its actual numbers for the Second Quarter of 2008, which matched the $2.8 billion or $5.14 per share numbers announced a week prior.  However, additional details provided investors and analysts with more insight into the reasons behind the loss.  As it turns out, most of the loss was due to about $3.7 billion in write downs due to bad loans.

48.    On September 10, 2008, the Company issued a press release announcing preliminary results for the third quarter ended August 31, 2008.  The Company reported a net loss of $3.9 billion and announced "a comprehensive plan of initiatives to reduce dramatically the firm's commercial real estate and residential mortgage exposure, generate additional capital through the sale of a majority stake of the Investment Management Division and reduce the

annual dividend, in order to maximize value for clients, shareholders and employees." The press

release stated in pertinent part:

> OVERVIEW OF PRELIMINARY THIRD QUARTER RESULTS
>
> Lehman Brothers reported a preliminary net loss of approximately ($3.9) billion, or ($5.92) per common share (diluted), for the third quarter ended August 31, 2008, compared to a net loss of ($2.8) billion, or ($5.14) per common share (diluted), for the second quarter of fiscal 2008 and net income of $887 million, or $1.54 per common share (diluted), for the third quarter of fiscal 2007. The net loss was driven primarily by gross mark-to-market adjustments stemming from writedowns on commercial and residential mortgage and real estate assets.
>
> Net revenues (total revenues less interest expense) for the third quarter of fiscal 2008 are expected to be negative ($2.9) billion, compared to negative ($0.7) billion for the second quarter of fiscal 2008 and $4.3 billion for the third quarter of fiscal 2007. Net revenues for the third quarter of fiscal 2008 reflect negative mark-to-market adjustments and principal trading losses, net of gains on certain risk mitigation strategies and certain debt liabilities.
>
> During the fiscal third quarter, the Firm is expected to incur negative gross mark-to-market adjustments on assets of ($7.8) billion, including gross negative mark-to-market adjustments of ($5.3) billion on residential mortgage-related positions, ($1.7) billion on commercial real estate positions, ($600) million on other asset-backed positions and ($200) million on acquisition finance positions. These mark-to-market adjustments were offset by $800 million of hedging gains during the quarter and $1.4 billion of debt valuation gains. The Firm is also expected to record losses on principal investments of approximately $760 million.
>
> In order to increase operating efficiency, the Firm has eliminated approximately 1,500 positions since the beginning of the third quarter in discretionary corporate areas and businesses that are in secular decline. [Emphasis added].

49.    Less than a week later, on September 15, 2008, Lehman filed a voluntary petition

to reorganize under Chapter 11 of the Federal Bankruptcy Code in the U.S. Bankruptcy Court for

the Southern District of New York in the largest bankruptcy filing in history. The price of the

Preferred J stock dropped precipitously and now trades at $0.10 per share – wiping out the investment interests of the Class.

50.    On September 23, 2008, CNN reported that the FBI is investigating, among other companies, Lehman and their senior executives for potential mortgage fraud. The FBI is trying to determine whether anyone at Lehman, including their senior executives, had any responsibility for providing "misinformation," CNN reported.

51.    During the Class Period, Director Defendants earned approximately $170 million by trading in Lehman Securities. These trades yielded astronomical profits even as the Company's Preferred J stock tumbled from a high of $25.55 to where they now trade at just $0.10 per share.

## CLASS ACTION ALLEGATIONS

52.    Plaintiff brings this action individually and on behalf of a Class of purchasers of Lehman Preferred J stock issued pursuant and/or traceable to the Company's February 5, 2008, Offering. Excluded from the Class are Defendants, members of the immediate families of each of the Defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any of the Defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded.

53.    The members of the Class are so numerous that joinder of all members is impracticable. Approximately 76 million shares of the Company's Preferred stock were sold in the Offering. The precise number of Class members is unknown to Plaintiff at this time but is believed to be in the thousands. In addition, the names and addresses of the Class members can be ascertained from the books and records of Lehman or its transfer agent or the underwriters for the Offering. Notice can be provided to such record owners by a combination of published

notice and first-class mail, using techniques and a form of notice similar to those customarily used in class actions.

54.     Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff has retained competent counsel experienced in class action litigation to further ensure such protection and to prosecute this action vigorously.

55.     Plaintiff's claims are typical of the claims of the other members of the Class because Plaintiff and all of the Class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to Defendants. Plaintiff does not have any interests antagonistic to, or in conflict with, the Class.

56.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged.  Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

57.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     Whether the Securities Act was violated by Defendants' acts as alleged herein;

(b)     Whether documents, including the Prospectus issued by Defendants to the investing public omitted and/or misrepresented material facts about Lehman and its business; and

(c)    The extent of injuries sustained by the Class and the appropriate measure of damages.

## FIRST CAUSE OF ACTION

### Violations Of Section 11 Of The Securities Act
### Against All Defendants

58.    Plaintiff repeats and realleges each and every allegation above as if set forth fully herein.  This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k. This claim is not based on fraud.

59.    This claim is brought by Plaintiff and on behalf of other members of the Class who purchased or acquired Lehman Preferred Series "J" stock pursuant to the Registration Statement and Prospectus.  Each Class member purchased or acquired their Lehman Preferred Series "J" stock pursuant to the Registration Statement and Prospectus.  Lehman is the issuer of the Lehman Preferred Series "J" stock through the Registration Statement and Prospectus.  The Director Defendants are signatories of the Registration Statement.

60.    Defendants owed to Plaintiff and the Class the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus at the time they became effective to ensure that such statements were true and correct and that there was no omission of material facts required to be stated to make the statements contained therein fair and accurate.

61.    None of the Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Prospectus were true or that there was no omission of material facts necessary to make the statements made therein not misleading.

62.    Defendants issued and disseminated, caused to be issued and disseminated, participated in the issuance and dissemination of, material misstatements to the investing public contained in the Prospectus, which misrepresented or failed to disclose, *inter alia*, the facts set

16

forth above. By reason of the conduct alleged herein, each defendant violated Section 11 of the Securities Act.

63.     Though direct claims against Lehman at this juncture are barred by the bankruptcy code, Lehman, as issuer of the stock sold in the Prospectus, would otherwise be strictly liable to Plaintiff and the Class for the material misstatements and omissions discussed above.

64.     Director Defendants, as issuer of the stock sold in the Prospectus, are strictly liable to Plaintiff and the Class for the material misstatements and omissions discussed above.

65.     Each of the Underwriter Defendants was an underwriter of the Lehman Preferred J stock as that term is used in Section 11(a)(5) of the Securities Act.

66.     At the time Plaintiff and the Class obtained their shares of Lehman Preferred J, Plaintiff and the Class had no knowledge of the facts concerning the misstatements or omissions alleged herein.

67.     This action is brought within one year after discovery of the untrue statements and omissions in the Prospectus, and within three years of the effective date of the Prospectus.

68.     By virtue of the foregoing, Plaintiff and the Class are entitled to damages under Section 11 as measured by the provisions of Section 11(e), from Defendants and each of them, jointly and severally.

## SECOND CAUSE OF ACTION

### Violations Of Section 15 Of The Securities Act
### Against Director Defendants

69.     Plaintiff repeats and re-alleges each and every allegation contained above as though fully set forth herein.

70.     This cause of action is brought by Plaintiff pursuant to Section 15 of the Securities Act, 15 U.S.C. § 77o, on behalf of the Class against the Director Defendants.

71.     Though direct claims against Lehman at this juncture are barred by the bankruptcy code, Lehman, as issuer of the stock sold in the Prospectus, would otherwise be liable as an issuer under Section 11 of the Securities Act as set forth in the first cause of action herein.

72.     Each of the Director Defendants was a control person of Lehman with respect to the Offering by virtue of their positions as senior executive officers and/or directors of Lehman.

73.     As a result, the Director Defendants are liable under Section 15 of the Securities Act for Lehman's primary violations of Section 11 of the Securities Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a)     declaring this action to be a Class action properly maintained pursuant to the Federal Rules of Civil Procedure, certifying the Class, and certifying their counsel as Class Counsel;

(b)     awarding Plaintiff and other members of the Class damages against Defendants, jointly and severally, together with interest thereon;

(c)     awarding Plaintiff and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, accountants' fees and experts' fees and other costs and disbursements; and

(d)     awarding Plaintiff and the Class such other and further relief as may be just and proper under the circumstances.

Dated: September 24, 2008

WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP

By: _____
        Gregory M. Nespole  (GN6820)
        Gustavo Bruckner  (GB7701)
        Martin Restituyo  (MR0856)
270 Madison Avenue
New York, New York 10016
Telephone: (212) 545-4600
Facsimile: (212) 545-4653
Email: Nespole@whafh.com
Email: Bruckner@whafh.com
Email: Restituyo@whafh.com

GAINEY & MCKENNA
Thomas J. McKenna
295 Madison Avenue, 4th Floor
New York, NY  10017
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
Email: tjmckenna@gaineyandmckenna.com
        tjmlaw2001@yahoo.com

*Attorneys for Plaintiff*

520723v7

## CERTIFICATION OF NAMED PLAINTIFF

To:    Thomas J. McKenna, Esq.          Tel:    212-983-1300
       Gainey & McKenna                 Fax:    212-983-0383
       295 Madison Avenue, 4th Floor    e-mail: tjmckenna@gaineyandmckenna.com
       New York, New York 10017

I, Michael Fogel, President of Fogel Capital Management, Inc. ("Plaintiff"), hereby retain Gainey & McKenna and such co-counsel they deem appropriate to associate with, subject to their investigation, to pursue Plaintiff's claims on a contingent fee basis and for counsel to advance the costs of the case, with no attorneys fee owing except as may be awarded by the court at the conclusion of the matter and paid out of any recovery obtained and I also hereby declare the following as to the claims asserted under the law that:

Plaintiff reviewed the draft complaint to be filed in this matter and authorized the filing.

Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in this private action.

Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

Plaintiff's transactions in **Lehman Brothers Holdings Inc.** security that is subject of this action during the Class Period are as follows:

| No. of Shares | Stock Symbol | Buy/Sell | Date | Price Per Share |
|---|---|---|---|---|
| See Attached | | | | |
| | | | | |

**Please list other transactions on a separate sheet of paper, if necessary.**

Plaintiff has sought to serve as a class representative in the following cases within the last three years:

Plaintiff has complete investment authority and is the agent and attorney-in-fact with full power and authority to bring suit to recover for investment losses.

Plaintiff will not accept any payment serving as a representative party on behalf of the class beyond Plaintiff's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _____ day of September, 2008

_____          453 S.E. Riverside Drive_____
Signature                        Address

Michael Fogel, President_____   Stuart, Florida 34994_____
Print Name (& Title if applicable)   City, State, Zip

Michael@FogelCapital.com         (772) 223-9686_____
E-mail                           Phone

_____
Other telephone numbers

**Lehman Series J 7.95%**

| No. of Shares | Stock Symbol | Buy/Sell | Date | Price Per Share |
|---|---|---|---|---|
| 200 | LEH-PJ | Buy | 02/04/08 | $25.00 |
| 2,000 | LEH-PJ | Buy | 02/04/08 | $25.00 |
| 500 | LEH-PJ | Buy | 02/04/08 | $25.00 |
| 1,000 | LEH-PJ | Buy | 02/04/08 | $25.00 |
| 300 | LEH-PJ | Buy | 02/04/08 | $25.00 |
| 100 | LEH-PJ | Buy | 02/04/08 | $25.00 |
| 1,000 | LEH-PJ | Buy | 02/04/08 | $25.00 |
| 5,000 | LEH-PJ | Buy | 02/04/08 | $25.00 |
| 500 | LEH-PJ | Buy | 02/04/08 | $25.00 |
| 2,000 | LEH-PJ | Buy | 02/04/08 | $25.00 |
| 400 | LEH-PJ | Buy | 02/04/08 | $25.00 |
| 500 | LEH-PJ | Buy | 02/04/08 | $25.00 |
| 6,000 | LEH-PJ | Buy | 02/04/08 | $25.00 |
| 2,000 | LEH-PJ | Buy | 02/04/08 | $25.00 |
| 1,000 | LEH-PJ | Buy | 02/04/08 | $25.00 |
| 2,000 | LEH-PJ | Buy | 02/04/08 | $25.00 |
| 500 | LEH-PJ | Buy | 02/04/08 | $25.00 |
| 3,000 | LEH-PJ | Buy | 02/04/08 | $25.00 |
| 1,000 | LEH-PJ | Buy | 02/04/08 | $25.00 |
| 500 | LEH-PJ | Buy | 02/04/08 | $25.00 |
| 2,000 | LEH-PJ | Buy | 02/04/08 | $25.00 |
| 1,000 | LEH-PJ | Buy | 02/04/08 | $25.00 |
| 2,000 | LEH-PJ | Buy | 02/04/08 | $25.00 |
| 1,000 | LEH-PJ | Buy | 02/04/08 | $25.00 |
| 1,000 | LEH-PJ | Buy | 02/04/08 | $25.00 |
| 2,000 | LEH-PJ | Buy | 02/04/08 | $25.00 |
| 1,000 | LEH-PJ | Buy | 03/11/08 | $24.099 |
| 1,000 | LEH-PJ | Buy | 03/13/08 | $23.809 |
| 3,000 | LEH-PJ | Buy | 03/18/08 | $20.896 |
| 300 | LEH-PJ | Buy | 03/28/08 | $21.350 |
| 1,000 | LEH-PJ | Buy | 03/28/08 | $21.292 |
| 200 | LEH-PJ | Buy | 03/28/08 | $21.383 |
| 500 | LEH-PJ | Buy | 03/28/08 | $21.323 |
| 1,000 | LEH-PJ | Buy | 03/28/08 | $21.303 |
| 4,000 | LEH-PJ | Buy | 04/15/08 | $23.452 |
| 2,000 | LEH-PJ | Buy | 04/21/08 | $23.904 |
| 400 | LEH-PJ | Buy | 05/21/08 | $23.710 |
| 300 | LEH-PJ | Buy | 05/27/08 | $21.530 |
| 300 | LEH-PJ | Buy | 05/27/08 | $21.567 |
| 200 | LEH-PJ | Buy | 05/27/08 | $21.60 |

| No. of Shares | Stock Symbol | Buy/Sell | Date | Price Per Share |
|---|---|---|---|---|
| 300 | LEH-PJ | Buy | 05/27/08 | $21.543 |
| 300 | LEH-PJ | Buy | 05/27/08 | $21.530 |
| 200 | LEH-PJ | Buy | 05/27/08 | $21.60 |
| 200 | LEH-PJ | Buy | 05/27/08 | $21.60 |
| 200 | LEH-PJ | Buy | 05/27/08 | $21.545 |
| 1,000 | LEH-PJ | Buy | 06/06/08 | $22.613 |
| 200 | LEH-PJ | Buy | 07/23/08 | $18.410 |
| 200 | LEH-PJ | Buy | 09/03/08 | $16.240 |